This case is called for oral argument. Is Dribben v. Lurbo Land Trust at all? Counsel, whenever you're ready to proceed, come in. Thank you, Your Honor. May it please the Court. My name is Paul Maddock, and I'm counsel for the plaintiffs slash petitioners, Dr. William and Wendy Dribben. Mrs. Dribben is seated in the back row there. I'd like to introduce her. Today I wanted to discuss two questions of law and the construction of the no-stalking statute with the Court. The first legal issue presented by the facts of this case are whether a preamble and a whereas clause can ever become an operative element of the contract. Specifically, I'm discussing what I've termed the easement agreement. It's the declaration of temporary easement and driveway agreement that the Davidsons presented to the trial court as a basis for an easement over the Dribben's property for a so-called walking path or private path. Illinois Supreme Court law is quite clear that the answer is no. You cannot use a preamble in the operative portion of the contract unless there's a situation where the preamble is incorporated by reference into the body of the contract, which did not happen in this case. There are no fact issues. It's a strict legal question as to what that document means. Of course, this Court's review of that issue would be no vote. The Dribben's have asked for an order directing the trial judge to find as a matter of law that there is no easement for a private path under this declaration of temporary easement agreement. The second legal question, any questions on that issue? The second legal issue is whether race judicata bars a litigant who had final judgment entered against them on a cause of action from then asserting that same cause of action as an affirmative defense. You're referring to the quiet title action. The quiet title action, that's correct. Essentially what happened was the Davidson's and Largo Land Trust sued the Dribben's claiming that the Dribben's interfered with their private path easement and that they had to go to court and they had to get court orders to allow the engineer onto the dam and so on and so forth. That case was decided against them on the pleadings and so they then did not appeal that ruling and it's a final judgment. Again, race judicata is a pure question of law and so it's an issue that this trial court would use to know of. The trial judge, for whatever reason, never addressed the issue finding it was moot. In the initial hearings in front of the trial judge, we asked him to look at the issue of race judicata and he suggested that the plaintiffs file a motion for reconsideration, which we did. Then when he entered his June 30th order, he simply dodged the whole motion for reconsideration and just said, well, it's moot. Obviously, the issue is not moot because, among other things, this claim to an easement over the Dribben's property severely clouds the title to the Dribben's property. I think we've all heard the expression, nobody wants to buy a lawsuit. That's what a prospective purchaser of the Dribben's property would be buying is a lawsuit. The Davidsons, in their first opposition, argued that they never sought relief for the issue of whether there was an easement over the Dribben property. Obviously, that is not the test. The test is whether they allege facts in their complaint, the transactional test of the Illinois Supreme Court. Did they allege facts in their complaint such that they should have or could have brought this claim that they had an easement? Where is the easement? What is it defined by? And so on and so forth. And so it's really quite clear that the Davidsons did seek relief for the private path issue, and we quoted those segments of their pleadings in our briefing. So regardless of whether they have to ask relief or not, they did ask for relief. They did plead facts. In their second opposition to the issue of race judicata, the Davidsons abandoned their first argument and said, well, gee, we haven't shown that the judgment's final. Obviously, the judgment is final under the Illinois Supreme Court rules and the case law. For both of these legal issues, the Dribbens would request an order that directs the trial court to enter judgment as a matter of law that race judicata bars any assertion as an affirmative defense that this easement exists and that directs the trial judge to enter an order as a matter of law that the preamble cannot be an operative element of the easement agreement. So those are the two major issues of law. And obviously, a ruling in the Dribbens' favor would then move the second appeal where the judge enjoined the Dribbens from interfering with this private path easement, which, in fact, and that would get rid of all the constitutional issues of notice and due process and so on and so forth. And this private path easement is an extreme source of anxiety between the parties. And so we would ask the court to grant that relief for the Dribbens. The next major issue is the construction of this new stocking statute, which I believe is a matter of first impression. I checked yesterday, and I still could not find any case law in the state of Illinois discussing 740 ILCS 21-1 at all. And so this is a virgin territory, so to speak. And it deals with how do you construe the no stocking statute as applied to third parties and not in the domestic violence context. The Dribbens have asserted, and I firmly believe, that this statute is meant to be read in pari materia with the domestic violence statute, which it's one of the elements of 740 ILCS 21 that you not be able to seek relief under the domestic violence act. So if I can seek relief under the domestic violence act, this statute doesn't apply. So if you read the 740, I believe it's 21-1, they talk about stocking being a serious crime and that everyone has a right to be left alone. You shouldn't have to be related to somebody in order to say, please leave us alone. The statute defines stocking as a course of conduct, not a single act, and I think that the trial court, for whatever reason, analyzed every single act in isolation and then found reasons why it could be innocently construed. Instead of viewing all of the events in sequence as a series of acts, when the Dribbens attorney, Per Trager, wrote Mrs. Davidson's lawyers time and again, four or five times, saying, please, tell your clients to stop contacting the Dribbens, leave them alone. And yet, time and again, she finds ways to inject herself into their lives and into the lives of their children, contacting their lawyers. She sent Dr. Dribbens' attorney, in the divorce proceedings between the Dribbens, a letter suggesting I could be turned into the Illinois Disciplinary Commission for ethical violations. This was done anonymously, the court found. So when that didn't work, of course, Mrs. Davidson called the lawyer directly, and we called Jonathan Marks, Bill Dribbens' lawyer, to the stand, and he testified about how Mrs. Davidson contacted him and then sent a fax to him from her work office that had her fax header on the top. And so, you know, it's undisputed that the Dribbens fled Heartland Oaks and bought a house, and actually bought two places because they're divorced now, but they bought a house in Richmond Heights and one in South St. Louis in order to get away from Mrs. Davidson. So 21-10 defines the course of conduct very broadly. It includes direct acts, indirect acts, acts through third parties, and so on and so forth. Pardon me, Marcus. Sure. That do a whole variety of things, such as monitoring, surveilling, threatening, communicating to or about a person, and in this case it would be the Dribbens. The act says that stalking can occur even if the defendant's in jail. So what that would mean is if, you know, somebody's in jail and they get their 10 minutes on the phone and they keep calling the same person over and over, that's stalking. Stalking is very broad. The key element is that it requires severe emotional distress. That's sort of the gatekeeper part of the act that just prevents anybody from filing one of these things any time they get angry at their neighbor, okay? And so the record is replete with five years. You know, I didn't go prior to 2006 really into the stuff then, but from 2006 on there's a powerful written and oral record of just act after act, month after month, where Mrs. Davidson does not leave the Dribbens alone. The judge said most of that was, how do you describe it? It's stale, okay? And the acts could not become stale because they're part of a series or sequence of conduct. It's the sequence of conducts viewed from a reasonable person's vantage point under the statutory language. And so as I said at the beginning on this construction part, it needs to be read in par and material with the Domestic Violence Act, which the Illinois Supreme Court held in Moore v. Green is to be broadly construed, okay? A broad construction requires acts not to be viewed in isolation, but to be viewed as a series under the reasonable person standard. And it also requires that, you know, the statute says that fees may be awarded, and the Dribbens badly need the fees. They're not General Motors or General Electric. I mean, they're just private people. And yet this litigation, Mrs. Davidson's lawyer is hired by her insurance carrier, and yet they've been carrying the full freight of these legal fees the entire time. It took four hearings to convince the judge that this statute was for real and it applied in this situation, and then he ultimately entered judgment in their favor, but for only three months. And so the purpose of the statute is to protect people who are being stalked and to prevent injury before it occurs. And so the court has entered a three-month order, a script of its criminal remedies, which has now expired. And there's currently pending a motion to supplement the record. I won't go into that evidence because it's not correctly in the briefs, but the motion's in front of the court. And, you know, the court can move on as it deems appropriate. Let me ask you a question. Yes, Your Honor. I don't know if this is in the record or not, but is there anything in the record that reflects the motivation of Mrs. Davidson for these acts? There is, and it's in the complaint, the sworn complaint. Okay. And I spent a fair amount of time drafting that complaint for this exact reason. The Davidsons filed an unsworn answer. But the motivation is that Heartland Oaks consists of three or four parcels, three or 42 acres and one's 23 acres. What Mrs. Davidson wants to do is drive her neighbors out, force them to sell their homes with all these clouds on their titles. I believe she'll even buy them directly from her. She, well, I can't say she. That's not in the record. But the restrictive covenants have a right of first refusal. So if the Drivens have an offer on their home, they have to offer it to Mrs. Davidson to buy first. And so once she buys a house, she has, and this is in the record too, it's in the exhibits book that was submitted to the court. She went to the zoning board in 2006 and tried to get zoning permission to subdivide her lot into six parcels, her home and five five-acre parcels. And so the road, the location of the road, screws up that plan. And the fact that there was a Liz Pendens Place on the dam and so forth also clouded her title as well. And so when the Drivens didn't cooperate with her in the way that she wanted to, she attacked them. Not physically, but she attacked them with tons of emails and phone calls. And she would park her Hummer, and this is in the record, she'd park her Hummer right on the property borderline and shine her lights into Mrs. Driven's home when Dr. Driven was deployed in Afghanistan. He's a surgeon with the Army. So, you know, the motivation is that I believe she wants their property. And when they didn't cooperate with her, she's used to getting her way, and she figured she would motivate them to give her her property. There's really no harm. Now that the court has entered an order finding Mrs. Davidson guilty of stalking, there's no harm in entering the order up to two years. It baffles me why the trial judge only granted it for three months. I'm in the process of preparing another motion to extend the order based on stuff that I can't tell you about because it's not in the record, but it is in my motion to supplement. So, you know, the Drivens really just want to get out of this mess. They've been dealing with it for going on six years now. It all started up in 2006. They've spent thousands and thousands of dollars of money on attorney's fees. And, again, under the broad construction of the statute, I analogize that to the Illinois Consumer Fraud Act, which allows for attorney's fees. It's broadly construed. And the presumption is that the fees are to be awarded. That's a good reason not. And so if this statute is broadly construed, the judge should have granted fees. So, in conclusion, you know, the Drivens are really begging this court to enter an order that directs the trial judge to enter the no stalking statute, apply the terms of the statute as they're written, including notifying the criminal authorities and grant them their reasonable attorney's fees. And we believe that will probably create peace and allow the parties to either settle or litigate in peace and end all the threats and potential for domestic, not domestic, but the potential for violence. Any questions, Your Honor? I don't think so. Thank you. Thank you very much for your consideration. Counsel? Excuse me. May it please the court, counsel. My name is Kevin Babb, and I am the attorney for the FLEs in this case, Geraldine Davidson, Gary Davidson, and the Norval Land Trust, which is the actual owner, the title owner of the property that's in dispute in this litigation. I think, first of all, in addressing the points raised by the appellants, it's important to look at the procedural posture that this case is in and why this case comes to the appellate court at this time. This case comes here because on May the 31st, there was a petition for a temporary restraining order that was filed. And the rulings, which are the subject of these two consolidated appeals, are the orders that were entered by the court as to the petition for TRO. And we know from case law that I cite in my brief that the standard of review for this court with respect to the granting or denial or modification of orders relating to petitions for temporary restraining orders is a discretionary one. That is, did the trial court abuse its discretion in taking whatever action it took, either granting, denying, or modifying the temporary restraining orders? In this case, and the trial court record will bear out, the trial court heard four days of testimony throughout the month of June of 2011. In a transcript which is over 500 pages. And with all due respect to this court, which sits as a court of review, the trial court was in a position of seeing the witnesses and assessing the credibility to be given to those witnesses and made his rulings on the basis of that. And that's why I believe in this case, for the purpose of the appeal from the preliminary injunctive relief, that the standard of review that this court should use is an abuse of discretion statute. I would like to address the points that were raised by the attorney for the appellant in the order that he takes them up. First of all, with respect to the issue of the easement, again, at this point in the proceedings, the question is not whether, as a matter of substance, that easement is a good easement or a bad easement. The question is, given the standards on which the court is to act in ruling on TRO, have the petitioners shown that they have a reasonable probability of succeeding on the merits? And I think, given that that is the standard, as opposed to an ultimate standard of the validity of the easement, and in light of the discretionary standard which this court is to use with respect to petitions for temporary restraining orders, the trial court acted within its discretion in finding that, most likely, the appellants would not have been able to prevail in their claim, as far as temporary relief goes, against the easement. First of all, the case law that I cite in my brief talks about the fact that, although the language contained in the precatory or the whereas clauses at the beginning of a document may not necessarily be considered controlling, they can and should be considered by the trial court in deciding what the intent of the parties is. And the appellate court, in looking at the validity of an easement, should look at the intention of the parties. In this case, the evidence is clear that at the time that that easement document was produced, the grantor of that easement, Todd Faber, was aware of what he was doing, he was aware of it, and this is a testimonial record that Mr. Faber gave when he testified at one of the hearings before the court in June, that he intended to convey that property, the interest in property that the easement constitutes, and the parties agreed that the diagram that's contained on the third page of that easement, which is the Xs around the property, in fact constituted what he was intending to convey as the basis of the easement. Further, we have a situation where I think that the trial court could reasonably read, within the language of the easement, that this grant of the easement, as far as the walking path around the property goes, is actually outside of the whereas clauses. Now, I'm not going to defend before this court the drafting of this document. I would not claim that this is a model of drafting as far as real property goes. But the fact is, it has a whereas clause, which lays out the general geographic description of the property. It has a whereas clause that talks about the fact that Gary Davidson and Geraldine Davidson desired to grant a temporary easement on Tracts 2 and 3, which, by the way, has nothing to do with this path. It's a separate thing. And then between those two whereas clauses, we have the following statement. Also, in return, it is mutually agreed between all tracts that a private path will extend off of the driveways on Tract 2 and 3 and will wrap around the entire property for the benefit of all tracts, including Tract 1, for the egress, egress, recreational activities, dam care and repairs and utilities, if need be. And I don't think it would be beyond the discretion of the court to read that that was a freestanding easement, although it appears, in terms of the construction of this document, between two whereas clauses. But it can be read plausibly, and certainly in a way that can be said not to be an abuse of the trial court's discretion, that that, in fact, is a freestanding easement. And therefore, this issue of whether it's part of a whereas clause or not really becomes irrelevant. And I think, therefore, the trial court appropriately found within the exercise of its discretion that the appellants did not demonstrate that they would have a reasonable possibility of succeeding in a trial on the merits on that issue of the easement. The next issue which the attorney for the appellant raised, which I will address, has to do with the question of the raised judicata aspect, if any, of the quiet title action, which is the 08-CH action. The important thing in that case is the fact that there is no evidence of an adjudication on the merits in that case. The record as to the 08-CH case, it's 08-CH-1207, shows there are two rules. There is a ruling saying that the complaint and the amended complaint are dismissed, period. No indication as to what the motivation for that is or the basis for it, if it is, in fact, an adjudication on the merits or an adjudication based on some other aspect of the circuit court's authority. And then there's a second order where the Davidsons, who were the plaintiffs in that case, or Mrs. Davidson, came in on a motion to reconsider, and the order simply says, and there was also a motion to amend, and the order says the motion to amend and the motion to reconsider is denied. No indication in that case that there was an adjudication on the merits of the questions that were raised in that case. Obviously, it's an 08 case, it was dismissed, 30 days have passed. We don't dispute the idea that that is a final judgment. The question is, is it a final judgment that adjudicated the merits of the real estate issues involved in this case? And I think, basically, the circuit court record in the 08 case does not indicate with specificity what is necessary for this court to ascribe res judicata effect to that prior order. With respect to the anti-stalking statute, I think there's, first of all, Judge Goldenhurst raised, asked questions about the motivation of the actions which were alleged to have been done by Mrs. Davidson. One thing which I hasten to point out to the court is in sworn testimony, in the four days of proceedings that were taken in this case, Mrs. Davidson denied all of those. And so, I don't want the court to get the impression that these alleged bad acts are stipulated to by the parties. They're strongly contested by the parties and ultimately, at some point, will become an issue of adjudication by the trial court. And again, when we get to the issue of adjudication by the trial court, an important thing to realize is the court actually saw these parties. It was able to see their demeanor, it was able to assess their credibility in a way that this court can on the basis of the cold record before it. And if one looks at the record where Judge McGlynn was explaining his order back on June 30th and also looks at the September order that was entered on that case, Judge McGlynn makes it clear that that order was not entered under the stalking statute. It was entered under the general injunctive power of the court. I thought it was interesting that in our brief before Judge McGlynn entered the September order, our argument was and our argument remains that the reason why Judge McGlynn's order didn't comply with the various provisions of the anti-stalking order is it wasn't entered under the anti-stalking order. And subsequent events in terms of the order that Judge McGlynn entered in September show that that's exactly the case. When Judge McGlynn was explaining his rationale, he said that stalking has for a long time been a term of art and has a very powerful and provokes a strong emotional response. When we think of stalking, we think of criminal and various conduct. It appears to me that through the course, the long course of interactions of the parties out there, that the driven society nefarious intent to every single thing that Mrs. Davidson does, I don't, the court referring to himself. And he further talks about, he says, talking about the stalking allegations of the complaint. It looks like we tread in both groups and we're hashing matters that have either previously been litigated or currently being litigated elsewhere. The complaint did contain some language and accusations that I think were very inflammatory. To allege in a lawsuit that this neighbor drove somebody to his death is a little over the top. And at the end, he says, I mean, there's a certain jargon aspect when one hears that in terms of talking about the elements of the anti-stalking statute. It's not necessarily stalking. So when I write this brief back in August, my explanation is the reason why it doesn't have the provisions in terms of the circuit clerk sending notice to the sheriff, that type of thing,  Is it your position, then, that the circuit court, Judge McGlenn, made an explicit or implicit finding that it was not stalking? Well, let me break that down. Was there an explicit finding that it was not stalking? Or are you arguing there's an implicit finding that this was not stalking? I think initially, if the court is talking about stalking in the statutory sense, Yes, exactly. I think there was an implicit finding through parts of the record, including the one I just read, that the trial court initially, in the June 30 order, was finding this was not statutory stalking. But it was something that apparently the court wanted to address, because there was that 90-day no contact period. Well, it was raised. So, yes, I understand that. So your position is this was an implicit finding that it was not stalking, and therefore the court went to the inherent conjunctive power. Correct. And that implicit finding was then made explicit when the court issued his order in September. It said, I didn't issue this under the Stalking Act. It was issued under the court's implicit authority. I also think, by the way, there's a question about whether this needs to be before the court at all, rather than the fact that the 90-day no contact period expired at the end of September. So essentially, this leaves the plaintiff in a position of arguing that they would be entitled to relief under the stalking statute, and there's no evidence of that. The best evidence in terms of whether relief is justified under the stalking statute would come from the testimony of the witnesses. The trial court heard the testimony of those witnesses, and as is clear, implicitly by the comments he made in June and then explicitly by the supplemental order he entered in September, that he found that there was no statutory stalking. He imposed this 90-day stay-away provision, and that 90-day period expired without any further incident. There wasn't any further action taken by the appellants or the trial court with respect to those issues. And that was the end of it. And so with respect to these issues and the other reasons raised in our brief, we think that as a matter of reviewing a complaint for injunctive relief, we think the court acted appropriately, and we think the appropriate thing for this court to do is simply to be remanded so it can be taken up on the merits by the trial court, along with all the other things which were raised in the complaint for money damages, which are still back there. The great majority of the issues involved in this lawsuit are still back in St. Clark County because they're part of a complaint for money damages and permanent injunctions. I don't think there's any action needed to be taken by this court, because I think the record shows that the trial court has acted within its discretion in propounding the rules that it's made up to this point. If the court has no further questions, I thank you for your time. Thank you. Thank you. Dr. Armstrong? I'll be very, very brief. I wanted to address this issue on the procedural context first. The no-stalking count was fully trialed, and the judge issued a plenary work, and so that was concluded. There's nothing preliminary about that. We argued in our briefs that the judge kept saying it's an emergency, and yet we had three or four hearings over the course of a month, fully met the terms of the statute. It's a plenary order by its own terms. So with respect to the no-stalking, that count was fully tried by the court, and he issued the June 30 order. Mr. Babb repeatedly referred to the portion of the September 6 order which this court struck as null and void, where he attempted to vacate his order, claiming that it was not a finding of stalking. Since that was stricken as null and void, I don't think it's appropriate to cite it in the record because it's not the record anymore. What's really extremely troubling to me and to the Drivens is the contrast between what the judge said at the hearing and the part that Mr. Babb left out of his brief and is quoted in our last reply brief on page 4. And it starts out the same quote that he read, but I agree if we were to read the statute narrowly just to prevent what we historically think of and what we think of in layman terms of stalking, the Drivens have a tough road to hoe. This is the part he omitted. However, I do think it's stalking no contact. That's the title of the statute, stalking no contact. And I think the few things that have tipped the scale and balance towards entering a no contact order is contacting Dr. Drivens' lawyer in a divorce case. I did find, I mean, there's a certain jarring aspect when one hears that. The statute requires and the burden of proof is on the Drivens. That's who's seeking this. The statute requires evidence of significance, significant that the conduct would result in significant mental suffering, alarm, or anxiety. And then it goes on, okay? There can be no doubt that the judge was analyzing the statute. He referenced the statute. He found that she violated the statute by his own title. And so to come in and tell you all that that never happened and why the judge subsequently entered an order saying that never happened is baffling to me. I just cannot think of a reason why that would occur. Let's see. So with respect to the interpretation of the contract, contract interpretation is a question of law. This court doesn't need to defer to Judge McLuhan's interpretation of the contract. Judge McLuhan has stated in open court several times three heads are better than one. Honestly, I think Judge McLuhan would rather have you decide it once and for all than he's off the hook. I mean, that's just me speculating, but I don't know. He has said a number of times three heads are better than one. I wanted to talk about res judicata. I think Mr. Babb is attempting to argue that there was never a final adjudication on the issue of the easement question. That's not the standard for res judicata. It's when you look at the complaint and the facts flood in the complaint, is this an issue that was raised or could have been raised? Clearly, they could have raised the issue. The case was ruled against them, and under Supreme Court Rule 273, unless the order of dismissal says it's for- So you're basically arguing issue preclusion. Issue preclusion, exactly. That's exactly correct. Same parties, same issue. Final adjudication in favor of the derivatives. I mean, otherwise, this issue will get litigated forever. The procedural context of the no-stalking testimony, my very first witness I called was Mrs. Davidson as a hostile witness. I then, through her, got into evidence virtually every document that's in the record. The court allowed it all in through her testimony. All of that is undisputed. I then called Mrs. Driven, and Mrs. Davidson never came back up to the stand and refuted a word that Mrs. Driven said about Mrs. Davidson's conduct. That's critical. Let's see. He also pointed out that the judge said at the hearing back in June that some of the allegations in the complaint were inflammatory. I thought that was inappropriate of the judge to make that comment. It's a sworn complaint. There's affidavits from both Dr. Driven and Mrs. Driven verifying that the facts in there are true. Dr. Driven, of everyone, is the most qualified to form an opinion as to whether or not the stress from what Mrs. Davidson did to Mr. Harris contributed to his death. Am I done? Yes. All right. And so thank you, Your Honor. Thank you. We appreciate the briefs and arguments of counsel to take the case under advisement that there will be three judges on the panel. Thank you.